IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
JOHN C. MCBRIDE,                    :
                                    :
          Plaintiff,                :
                                    :
     v.                             : Civil Action No. 08-128-JJF
                                    :
MICHAEL J. ASTRUE,                  :
Commissioner of Social              :
Security,                           :
                                    :
          Defendant.                :
                                    :
                                    :
```

David F. Chermol, Esquire of CHERMOL & FISHMAN, LLC,
Philadelphia, Pennsylvania.
Stephen A. Hampton, Esquire of GRADY & HAMPTON, LLC, Dover,
Delaware.
Attorney for Plaintiff.

David C. Weiss, Esquire, United States Attorney, and Dina White
Griffin, Esquire, Special Assistant United States Attorney, of
the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Of Counsel: Eric P. Kressman, Esquire, Acting Regional Chief
Counsel; Lori Karimoto, Esquire, Assistant Regional Counsel, of
the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.
Attorneys for Defendant.

**MEMORANDUM OPINION**

September $\cancel{30}$, 2009
Wilmington, Delaware

he

Farnan, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, John McBride, seeking review of the final administrative decision of the Commissioner of the Social Security Administration (the "Administration") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. Plaintiff has filed a Motion For Summary Judgment (D.I. 15) requesting the Court to direct an award of benefits or remand this matter to the Administration for further findings and proceedings. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 18) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated August 14, 2006, will be affirmed.

## BACKGROUND

### I. Procedural Background

Plaintiff filed a protective application for SSI on May 25, 2004, alleging disability since August 23, 2002, due to physical and mental impairments. (Tr. 59-62). Plaintiff's application was denied initially and upon reconsideration. (Tr. 41-45, 49-53). Thereafter, Plaintiff requested a hearing before an

1

administrative law judge (the "A.L.J."). (Tr. 54). On August 14, 2006, the A.L.J. issued a decision denying Plaintiff's application for SSI. (Tr. 8-21). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. (Tr. 8-11). On November 30, 2007, the Appeals Council denied Plaintiff's request for review, and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying his claim for SSI. In response to the Complaint, Defendant filed an Answer (D.I. 12) and the Transcript (D.I. 14) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and Opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has filed a Reply Brief. Accordingly, the Court will proceed to address the merits of Plaintiff's claims.

## II. Factual Background

### A. Plaintiff's Medical History, Condition and Treatment

At the time Plaintiff filed his application, Plaintiff was 34 years old and defined as a younger individual under 20 C.F.R. § 416.963. Plaintiff completed eight grade and had some ninth grade education, but never completed ninth grade. Plaintiff's past work experience includes employment as a worker in a chicken plant, a baker at Dunkin' Donuts and a house painter. (Tr. 100, 505-506). Plaintiff alleges disability since August 23, 2002. Plaintiff's detailed medical history is contained in the record; however, the Court will provide a brief summary of the pertinent evidence.

#### 1. Physical Impairments

Plaintiff has a long history of accidents and altercations resulting in physical injury. After an August 2002 accident, Plaintiff was taken to the emergency room. His physical exams and tests were essentially normal. He was diagnosed with a cervical strain and multiple abrasions and contusions. In February 2003, Plaintiff went to the emergency room complaining of left hand pain and neck pain. His physical examination was normal and he was diagnosed with nerve impingement syndrome. A subsequent MRI of Plaintiff's cervical spine was also normal. Plaintiff reported for occupational therapy and his attendance was sporadic. However, Plaintiff was reported as making good

progress, improving his range of motion and strength in his left, upper extremity.

Plaintiff treated with Dr. Fried from September 29, 2003 until July 2004. (Tr. 132-137). Dr. Fried diagnosed Plaintiff with alcohol abuse, chronic cervicolumbar pain, knee pain, anxiety and bipolar disorder. Plaintiff's sensation was within normal limits and his strength of the upper extremities was 5/5. Often in his examinations, Dr. Fried noted some tenderness over Plaintiff's lumbar and cervical paraspinals. Dr. Fried prescribed pain relievers, including Vicodin, and ultimately discharged Plaintiff because he was non-compliant with office visits, was buying Vicodin on the streets, and had an altercation in the lobby of Dr. Fried's office, because Plaintiff was upset that he was only given a limited Vicodin prescription. (Tr. 132).

Plaintiff sought emergency room treatment in July 2004 after an assault. Plaintiff had multiple abrasions and a cervical strain, but normal physical, neurological and psychiatric examinations. (Tr. 306).

Plaintiff attended physical therapy for a period of time, but failed to show for numerous scheduled appointments. As a result, Plaintiff was discharged. (Tr. 407-411).

Plaintiff also treated with Dr. Upadhyay. Plaintiff's neurological exams with Dr. Upadhyay were intact. (Tr. 197, 199,

4

377, 388. During office visits, Dr. Upadhyay noted Plaintiff's subjective complaints of back, knee and neck pain. However, Dr. Upadhyay noted that Plaintiff had normal strength of the upper and lower extremities, a normal MRI of the neck, a non-antalgic gait, and the ability to move normally about the exam room. In April 2005, Dr. Upadhyay discussed the issue of work with Plaintiff and told him that he could work at sedentary to light duty, but Dr. Upadhyay believed that Plaintiff's mental illness would preclude him from working in any capacity. He advised Plaintiff to apply for total disability based on post traumatic stress disorder. (Tr. 383). In August of 2005, Plaintiff underwent a bone scan which revealed avascular necrosis of the left tibia.

On January 9, 2006, Dr. Upadhyay completed a Physical Residual Functional Capacity Questionnaire for Plaintiff. Dr. Upadhyay noted Plaintiff's avascular necrosis of the left tibia and opined that his prognosis was "poor." (Tr. 424-426). Dr. Upadhyay opined that Plaintiff could stand or walk less than 2 hours a day, but could sit or stand at least 6 hours a day and required frequent breaks to change positions. Dr. Upadhyay limited Plaintiff to lifting less than ten pounds occasionally and found that he could engage in reaching for no more than 15% of an eight-hour workday. Dr. Upadhyay also found that Plaintiff could grasp, turn and twist objects for 75% of an eight-hour

5

workday.

With the referral of Dr. Upadhyay, Plaintiff treated with Lawrence Piccioni, M.D. for complaints of back and leg pain. In September 2005, x-rays of Plaintiff's leg showed a "malunion with essentially a bayoneted tip-fib fracture which is healed solidly at this point." (Tr. 331). Dr. Piccioni opined that Plaintiff's injury was "so long down the line, there would be significant difficulty in obtaining a true, regular union." Dr. Piccioni was also concerned that the risk to Plaintiff of nerve or vessel damages would outweigh any gain of a surgical procedure. However, Dr. Piccioni recommended that if Plaintiff pursued surgery it would be done at the University of Pennsylvania with a team of vascular and orthopedic surgeons.

2. Mental Impairments

Plaintiff treated with Yvette Baker, M.D. for his mental impairments. Plaintiff's history indicates, among other things, drug and alcohol abuse. As of February 2004, Dr. Baker diagnosed Plaintiff with bipolar disorder, an anxiety disorder, not otherwise specified, and ADHD, inattentive type, in partial remission. Dr. Baker rated Plaintiff with a global assessment of functioning score ("GAF") of 59, and then completed a Psychiatric Assessment Form the same day in which she noted a GAF of 54. On two occasions, Dr. Baker completed a Medical Certification for Plaintiff and opined that Plaintiff could not work for 6-12

6

months. In follow-up visits, Dr. Baker noted improvement in Plaintiff's mood.

Plaintiff underwent a consultative psychiatric evaluation with Dr. Chester who noted that Plaintiff reported no other signs or symptoms consistent with post-traumatic stress disorder, except that he claimed he used drugs and alcohol because he had nightmares about his father's death. Dr. Chester rated Plaintiff's GAF at 41 and diagnosed Plaintiff with polysubstantce dependence, reportedly in remission, PTSD and personality disorder NOS with probable anti-social traits.

In January 2005, Dr. Baker wrote a letter on Plaintiff's behalf to the Family Court of the State of Delaware. Plaintiff told Dr. Baker he was "through" paying child support and wanted her to provide an opinion as to whether he could work. Dr. Baker opined that Plaintiff was unable to work because he was having panic attacks, had a fear of the public, could not take orders, had angry outbursts, had decreased concentration and ability to pay attention to details, obsessive thinking and worry that affected his ability to concentrate, depression that decreased his judgment, and manic symptoms that caused him to engage in risk behavior.

On February 15, 2005, Dr. Baker amended her February 2004 Psychiatric Assessment to provide that Plaintiff "cannot work any job based on his mental disorders." (Tr. 173). On the same day,

7

however, Dr. Baker's progress notes indicated that Plaintiff was less depressed, had improved sleep and his mood and anxiety were stable. Dr. Baker saw no need to adjust Plaintiff's medication.

On January 31, 2006, Dr. Baker completed a Mental Impairment Questionnaire form for Plaintiff. Dr. Baker noted a current GAF of 58 with the highest GAF in the past year of 66.

In light of Dr. Baker's opinions, the ALJ ordered Plaintiff to undergo a psychological evaluation. Dr. Keyes reviewed Plaintiff's records and conducted an evaluation. He noted that Plaintiff exhibited impulsive behavior and was not cooperated, interested or motivated during his examination. Plaintiff earned verbal, performance and full scale IQ scores of 73, 74 and 71, respectively, which indicated borderline intellectual functioning. However, Dr. Keyes believed that Plaintiff's test results were an underestimation of his actual ability given his poor motivation. Plaintiff's MMPI-II profile was invalid because he responded in an exaggerated manner noting every clinical symptom on the test, which Dr. Keyes found was unreasonable from a clinical standpoint. Dr. Keyes rated Plaintiff's GAF at a 55 and completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) form in which he opined that Plaintiff had slight restriction on his ability to understand, remember and carry out instructions, and a slight restriction in his ability to respond appropriately to changes in a routine work

8

setting. Dr. Keyes also noted that Plaintiff had a moderate restriction in his ability to respond appropriately to supervisors, co-works and work pressures in a work setting. For purposes of his evaluation, moderate was defined as still able to function satisfactorily.

### B. The A.L.J.'s Decision

At the hearing, Plaintiff was represented by counsel, and Plaintiff testified. The A.L.J. consulted a vocational expert and asked her to consider a hypothetical person with Plaintiff's vocational profile who could lift or carry 10 pounds occasionally and less than ten pounds frequently, could sit 6 hours and stand/walk less than 2 hours in an 8 hour work day, could occasionally climb ramps and stairs, but never climb ladders, ropes and scaffolds, could perform other postural activities, had to avoid concentrated exposure to vibrations and hazards, was limited to performing simple tasks and following simple instructions with no more than occasional face-to-face or telephone contact with the public and only occasional close work with co-workers. (Tr. 508-509). The vocational expert testified that such a plaintiff could perform several unskilled sedentary jobs in the national economy including (1) a sorter, with 500 jobs locally and 90,000 jobs nationally, (2) an inspector with 500 jobs locally and 150,000 jobs nationally, and (3) a mail sorter with 400 jobs locally and 90,000 jobs nationally. (Tr.

508-509). The A.L.J. then asked the vocational expert to
consider medical records of Plaintiff that, among other things,
limited Plaintiff to sitting for 45 minutes and standing for five
minutes. These medical records also suggested that the person
experienced pain severe enough to interfere with attention and
concentration on a constant basis. According to the vocational
expert, a hypothetical individual with these limitations could
not perform any work in the national economy.

In his decision dated August 14, 2006, the A.L.J. found that
Plaintiff suffered from bipolar disorder and residuals of a motor
vehicle accident including leg length discrepancy and neck pain,
which are "severe" impairments, but which do not meet or
medically equal a listing. The A.L.J. also found that
Plaintiff's allegations regarding the intensity, persistence and
limiting effects of his symptoms were not entirely credible in
light of the medical evidence in the record. The A.L.J. further
found that Plaintiff had the residual functional capacity to
perform a range of sedentary work, subject to the limitations
identified by the A.L.J. in his hypothetical to the vocational
expert at the hearing. Based on this residual functional
capacity, the A.L.J. determined that Plaintiff could not perform
his past relevant work, but could perform a number of other jobs
existing in significant numbers in the national economy.
Accordingly, the A.L.J. concluded that Plaintiff was not under a

10

disability within the meaning of the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores

11

or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## DISCUSSION

## I.   Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. §§ 404.1505, 416.905. In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. § 404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990). The

claimant bears the initial burden of proving disability. 20 C.F.R. §§ 404.1512(a), 416.912(a); Podeworthy v. Harris, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 404.1520, 416.920. In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity. In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three. In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial gainful work. Id. at 428. If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. Id. The claimant bears the burden of

establishing that he or she cannot return to his or her past relevant work. Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. Id. Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

## II. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By his Motion, Plaintiff contends that the A.L.J.'s decision is not supported by substantial evidence. Specifically, Plaintiff contends that the A.L.J. (1) failed to provide valid reasons for rejecting the opinions of Plaintiff's treating psychiatrist, Dr. Baker, (2) failed to address and weigh other medical evidence in the record consistent with disability like the opinions of his treating physicians, Dr. Upadhyay, and the consultative psychiatric evaluation of Dr. Chester, and (3)

14

failed to provide the A.L.J. with a proper hypothetical that included all of Plaintiff's limitations.

The Court has reviewed the decision of the A.L.J. in light of the record evidence and concludes that it is supported by substantial evidence. Although a treating physician's opinion is entitled to great weight, a treating physician's statement that a plaintiff is unable to work or is disabled is not dispositive. The A.L.J. must review all the evidence and may discount the opinions of treating physicians if they are not supported by the medical evidence, provided that the A.L.J. explain his or her reasons for rejecting the opinions adequately. Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001); Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).

In this case, the A.L.J. identified the proper standard for consideration of the opinions of Plaintiff's treating physicians, discussed those opinions and concluded that they were not entitled to significant weight. The Court cannot conclude that the A.L.J.'s assessment was erroneous. The opinions of Plaintiff's treating physicians and psychiatrists are largely based on Plaintiff's subjective complaints and reports and not on medically acceptable clinical and laboratory diagnostic techniques. Plummer, 186 F.3d at 430. MRIs and CT scans performed on Plaintiff were within normal limits. A bone scan revealed that Plaintiff suffered from a tibia condition causing

15

leg length discrepancy; however, the A.L.J. adequately considered this condition in his decision. Further, psychological testing performed on Plaintiff revealed that he exaggerated his symptoms. (Tr. 441-442).

In addition, as the A.L.J. noted, there is substantial evidence in the record that conflicts with the opinions of Plaintiff's treating physicians, including (1) inconsistencies between Dr. Baker's progress notes and her opinions regarding Plaintiff's ability to work, (2) inconsistencies between Plaintiff's own reports of daily activities and his testimony concerning his limitations and the opinions of his treating physicians, and (3) the opinions of state agency physicians regarding Plaintiff's condition. By way of brief example, Dr. Upadhyay opined that Plaintiff suffered from manipulation restrictions in both of his extremities, yet Dr. Upadhyay never provided a diagnosis related to this alleged problem, noted that Plaintiff's sole impairment was leg pain from the avascular necrosis of his left tibia, and never explained why this tibia condition affected his ability to manipulate with his arms and hands. Further, Dr. Upadhyay's opinion regarding Plaintiff's manipulative restrictions was contradicted by Plaintiff's testimony at the hearing that his right arm was "fine" and the problems with his left arm were resolved. (Tr. 476, 478). Further, Dr. Baker's treatment notes and assessments from other

16

medical sources conflict with Dr. Baker's opinions regarding Plaintiff's significant limitations. For example, Dr. Baker opined that Plaintiff could not follow instruction or persist at tasks, yet her treatment notes frequently indicate that Plaintiff's thinking was organized, his memory was intact and he was cognitively alert. (Tr. 184, 187-188, 193). Evaluations by non-treating, consultative physicians, often at contemporaneous times to Dr. Baker's limiting opinions, similarly show that Plaintiff was organized and cognitively alert with intact memory and the ability to generally perform serial 3 subtractions (Tr. 439, 442), a sign that his concentration was adequate.

In his decision rejecting the opinions of Dr. Baker and Dr. Upadhyay, the A.L.J. noted the deficiencies and contradictions between the medical evidence in the record and the opinions of these treating physicians and provided adequate explanation as to why he was rejecting the opinions of Plaintiff's treating physicians. Accordingly, the Court is not persuaded that the A.L.J. erred in his analysis of the relevant medical evidence.

As for the hypothetical question the A.L.J. posed to the vocational expert, the Court further concludes that this hypothetical adequately took into account those limitations on Plaintiff's ability which were credibly supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). This included limitations on Plaintiff's physical abilities, as well

17

as several restrictions directed toward accommodating his mental
condition.

In sum, the Court declines to reweigh the evidence or
substitute its own conclusions for the conclusions and findings
of the A.L.J. where, as here, substantial evidence supports the
A.L.J.'s determinations. Accordingly, the Court will affirm the
decision of the A.L.J. denying Plaintiff claim for SSI.

## CONCLUSION

For the reasons discussed, the Court will grant Defendant's
Cross-Motion For Summary Judgment and deny Plaintiff's Motion For
Summary Judgment. The decision of the Commissioner dated August
14, 2006, will be affirmed.

An appropriate Order will be entered.

18